**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION**

| | | |
|---|---|---|
| S.H. b/n/f DENNIS & BRANDY HART, and INDIVIDUALLY, Plaintiffs, | § § § § | CA: 7:24-cv-00131 |
| v. | § § § | JURY DEMAND |
| MIDLAND INDEPENDENT SCHOOL DISTRICT Defendant. | § § § § | |

**FIRST ORIGINAL COMPLAINT**

COMES NOW S.H. (also referred to as the Student") by and through next friends and natural parents, Dennis and Brandy Hart, and also Individually, (collectively referred to as 'Plaintiffs") files this *First Original Complaint* alleging that the Midland Independent School District (hereinafter referred to as "MISD" or the "School District"), violated the various rights of S.H. and his parents, all as more specifically pled herein. Plaintiffs reserve the right to replead if new claims and issues arise upon further development of the facts, and as permitted by law. In support thereof, S.H. would respectfully show this Court, the following:

**I. NATURE AND PURPOSE OF ACTION**

1. S.H. was born on July 10, 2008. He experienced bullying and harassment coming to a head in the Spring 2023 semester while in the 8th grade at Alamo Junior High School. The same bullies followed him into the 9th grade at the Legacy Freshman High School both in the Midland ISD. S.H. is Caucasian, small and of diminutive stature for his age. He went to a predominantly Hispanic student populated school and was a victim of derision because of his race, and because he was not as 'macho' as his peers. He was verbally and physically

|     | |
| --- | --- |
|     | bullied,, even severely assaulted on numerous occasions. He was bullied in class, in the hallways and in restrooms. No place was safe for him. His mother complained to the School Principal and other School Officials on numerous occasions about the harassment her son was experiencing but to no avail. The Staff failed to follow their own School Board Policies & Procedures, which provide a number of substantive and procedural rights for Parents and Students. |
| 2.  | With the bullying and harassment left unrequited, a number of students felt they had license to continue in their harassment of S.H., leading to more and more vicious assaults. As such, and on behalf of S.H. his parents file this lawsuit arguing their son's rights, and their own pursuant to the United States Constitution, were violated by the School District. They also file claims of discrimination based upon race pursuant to Title VI of the Civil Rights Acts of 1964, 42 U.S.C. 42 U.S.C. §2000d and for discrimination based upon sex, gender and gender stereotypes pursuant to Title IX of the Educational Act of 1972, 20 U.S.C. §1681 et seq. |

## II. JURISDICTION

| | |
| --- | --- |
| 3. | Jurisdiction is conferred upon this Court pursuant to 28 U.S.C.A. §1331 and §1343 because the matters in controversy arise under the Constitution and laws of the United States. |

## III. VENUE

| | |
| --- | --- |
| 4. | Pursuant to 28 U.S.C. §1391 this Court is the proper Venue over this cause, as all events and omissions giving rise to Plaintiff claims occurred in the Western District of Texas, Midland Division. |

## IV. PARTIES

5. S.H. lives with his mother and father at 1006 Clemente, Texas 79707. At all times pertinent to this case, S.H. was a student in the Midland Independent School District.

6. His parents Dennis and Brandy Hart join in this cause regarding their own Parental Rights.

7. The Midland Independent School Board is a political subdivision of the State of Texas. It is a local educational agency, within the meaning of state and federal law and the rules promulgated thereunder. They may be served by and through their Superintendent, Dr. Stephanie D. Howard, at 615 W. Missouri Ave., Midland, Texas 79701 though Plaintiffs reasonably believe they will be represented by attorneys with the Law Firm of Leasor Crass, 303 West Broad Street, Mansfield, Texas 76053; (682) 422-0009 [Telephone]; (682) 422-0008 [Facsimile].

## V. STATEMENT OF FACTS

A. SCHOOL BOARD POLICIES & PROCEDURES AND PARENT'S RIGHTS

  1. About The Midland Independent School District

8. Midland Independent School District is a public school district in Midland, Texas. Midland ISD contains 41 campuses. It includes the portions of Midland and Odessa in Midland County. Midland ISD, as of the 2021-2022 school year, had 26,387 students.[1] Sixty-five percent of those students are Hispanic and 22.7 percent white; 54.4 percent are at-risk of dropping out of school; 15.3 percent Limited English proficiency; and 8.8 percent special education. The School Board has developed policies and procedures regarding bullying and harassment of students based upon race, nationality and country of origin, and separately for bullying and harassment of students based upon sex, gender and gender stereotypes.

---

[1] https://schools.texastribune.org/districts/midland-isd/

9. Taken together these School Board Policies & Procedures act as "Parent & Student Rights" with significant substantive and procedural protections.

   2. About Bullying & Harassment In General

10. For instance FFI (LOCAL) - STUDENT WELFARE FREEDOM FROM BULLYING is a policy that addresses bullying of District students. Bullying includes "hazing, threats, taunting, teasing, confinement, [and] assault." Under this policy, "[t]he principal or designee shall determine whether the allegations in the report, if proven, would constitute prohibited conduct as defined by policy FFH, including dating violence and harassment or discrimination on the basis of race, color, religion, sex, gender, national origin, or disability. If so, the District shall proceed under policy FFH. If the allegations could constitute both prohibited conduct and bullying, the investigation under FFH shall include a determination on each type of conduct." Additionally, the Superintendent shall develop procedures allowing a student to anonymously report an alleged incident of bullying.

11. Also according to the FFI (LOCAL) policy, "[t]he principal or designee shall conduct an appropriate investigation based on the allegations in the report. The principal or designee shall promptly take interim action calculated to prevent bullying during the course of an investigation, if appropriate." Absent extenuating circumstances, the investigation should be completed within ten days and the principal or designee shall prepare a final, written report of the investigation. None of these things were done regarding the bullying and harassment that S.H. received. Finally, the FFI (LOCAL) policy states that a "student who is a victim of bullying and who used reasonable self-defense in response to the bullying shall not be subject to disciplinary action."

12. The related FFI (LEGAL) - STUDENT WELFARE FREEDOM FROM BULLYING policy defines bullying and further provides that the school " board shall adopt a policy, including any necessary procedures, concerning bullying that prohibit bullying of a student and prevent and mediate bullying incidents." The school board had no such policy, and even if they did, they did not adhere to it's terms. The policy also provides for counseling option for students who are victims of bullying and prohibits the punishment of a student who uses self defense against bullying.

    3.    About Bullying & Harassment Based Upon Race

13. FFH (LOCAL) STUDENT WELFARE FREEDOM FROM DISCRIMINATION, HARASSMENT, AND RETALIATION prohibits discrimination on the basis of race, color, religion, sex, gender, national origin, age, disability, or any other basis prohibited by law.

14. There is also a broad nondiscrimination statement within the board's policies. FB (LEGAL) EQUAL EDUCATIONAL OPPORTUNITIES generally prohibit discrimination on the basis of race and retaliation under Title VI. There are no other meaningful discussions of Title VI in the school board's policies.

    4.    About Bullying & Harassment Based Upon Sex And/Or gender Stereotypes

15. FFH (LOCAL) STUDENT WELFARE FREEDOM FROM DISCRIMINATION, HARASSMENT, AND RETALIATION prohibits discrimination on the basis of sex as contemplated by Title IX of the Educational Acts of 1972. 20 U.S.C. §1681 et seq. The local policy appoints a Title IX Coordinator to investigate allegations of sexual harassment, abuse and/or discrimination based upon sex. The policy makes clear that one form of prohibited behavior is gender-based harassment. Gender-based harassment "includes physical, verbal,

or nonverbal conduct based on the student's gender, the student's expression of characteristics perceived as stereotypical for the student's gender, or the student's failure to conform to stereotypical notions of masculinity or femininity."

16. Much like the FFI policies, the FFH (LOCAL) also requires that "upon receipt or notice of a report, the District official shall determine whether the allegations, if proved, would constitute prohibited conduct as defined by this policy. If so, the District shall immediately undertake an investigation." Additionally, "if the District official determines that the allegations, if proved, would not constitute prohibited conduct as defined by this policy, the District official shall refer the complaint for consideration under FFI." Importantly, the FFH (LOCAL) also states that:

> When the District receives notice or an allegation of conduct that, if proved, would meet the definition of sexual harassment under Title IX, the Title IX coordinator shall promptly contact the complainant to:
>
> a.  Discuss the availability of supportive measures and inform the complainant that they are available, with or without the filing of a formal complaint;
>
> b.  Consider the complainant¡|s wishes with respect to supportive measures; and
>
> c.  Explain to the complainant the option and process for filing a formal complaint.
>
> The District's response to sexual harassment shall treat complainants and respondents equitably by offering supportive measures to both parties, as

   appropriate, and by following the Title IX formal complaint process before imposing disciplinary sanctions or other actions that are not supportive measures against a respondent.

17.  FFH (LEGAL)- STUDENT WELFARE FREEDOM FROM DISCRIMINATION, HARASSMENT, AND RETALIATION is a very lengthy policy that contemplates much of the above. Most importantly, it sets out a very specific investigatory process, the rights of the student and parent during the process, record keeping duties and remedies that the School Board should provide a victim a number of what are termed 'supportive measures.' Moreover the victim and her family must receive information about their legal rights during this process as well as their right to appeal of an unfavorable decision. Last the alleged victim and family be notified of their right to be free from coercion and retaliation.

18.  Taken together, this amalgam of the law, regulations, professional guidelines and School Board Policies & Procedures" create 'Parents Rights.

B.  ABOUT S.H.

19.  S.H. was born on July 10, 2008. S.H. is Caucasian. He is small, somewhat physically immature for his age for age and not as physically mature as most of his peers. At the time period made the basis of this complaint he was under 5 feet tall and weighed less than 115 pounds. He was relentlessly bullied, on almost daily basis, due to the fact that he did not fit into a stereotypical gender rolls. He bad been verbally assaulted with insults such as "fag" or "why are you gay?" which were often attached to the physical attacks. All his attackers were Hispanic and well-known to School Officials for their aggressive behaviors both in general and as to S.H. in particular.

C.  THE SPRING 2023 SEMESTER

20. For instance, on or about April 25, 2023, S.H. was sitting in class when 6–7 students, all Hispanic, who did not have that same class walked in to the class and told S.H. to "come outside little bitch." The teacher, Mrs. Rubio told the students to leave, which they did though however, they stayed close. When it was time for S.H. to change classes, he refused to leave because he feared , and rightfully so, he was about to get jumped. The teacher did not call the Principal or Vice-Principal at the Main Office or attempt to protect S.H. in any way. Rather, she simply wrote S.H. a note for his next class he would be late. When S.H. left that classroom the students, now just outside rushed at him and attacked him. A Hispanic student named Nick punched him in the right side of his face.

21. When S.H. finally got away he spoke to his counselor and told her he had been followed all day by this gang, was punched in the face by Nick, that a group of students also said they wanted to jump him and had already actually gone all the way into his class threatening him.

22. The Counselor sent S.H. to the Principal, Dr. Marcus Tinajero where S.H. repeated everything he had told the Counselor. The Principal called Mrs. Hart around 3:15 p.m. and told S.H. to go back to class and he would care of the problem. He did not. S.H. was hesitant to return unescorted but to add insult to the proverbial to injury, the Principal threatened to discipline S.H. if he did not return to class. In fact, no sooner did S.H. leave the office then he was jumped again by about five of the very same students who had attacked him earlier in the day. Now, Nick pushed him, then another student named Jessie punched him in the side of the head and was then he struck in the left side of the eye while he was trying to fight off both. Soon many other students started hitting S.H., so many he

had to cover up and thus does not even know who they were. He was hit over and over again especially in the ribs. He had backpacks thrown at him. He was called "white-boy", bitch, faggot and pussy. Finally, a teacher ran over and broke up the fight but soon left him alone. S.H. was soon threatened by another student, Tristian who is over 6 feet tall and also very physically mature for his age. S.H. ran back to the Principal's Office for protection, though by now 'too little too late.' S.H. experienced large bruising around his eyes, swelling and pain.

23. In any case, in and about 3:30 p.m., the Dr. Tinajero again called Mrs. Hart and said "we tried to save your son" but were unable to do so. He did not say 'how' they had tried, because the 'did not.' Mrs. Hart asked if S.H. was okay and Dr. Tinajero told her they sent him back to class after the nurse checked him. Dr. Tinajero went on to tell Mrs. Hart that a group of five students attacked S.H. Mrs. Hart was outraged and asked that the school call the police. Dr. Tinajero said he would do so. Mrs. Hart let him know she was on her way to the campus. When she arrived and saw her son's face, she became even more upset. She threatened to have all of the students arrested for assault. She left messages for Teresa Moore and Jill McCall, of Student Service and Directors, No one returned her call.

24. On the very next day, the 26th, S.H. came home from school and told his mother that these very same students that jumped him the day before were all still attending school and continued to bully and harass him. Mrs. Hart immediately called Dr. Tinajero but had to leave a message because he did not respond. Mr. Hart called the school again on the next day, and again left a message, now for Trish Teran, also with Student Services. On that same day, mother finally spoke to Teresa Moore and expressed S.H's fears and her own,

about the many students who had attacked her son. Ms. Moore listened but said little and did less, and nothing in response to concerns about S.H.'s safety.

25. Ms. Teran separately responded and expressed her own sorrow sorry as to what had happened. She admitted that "we failed your son and nothing I say can make it any better," "I put my mom hat on and told the staff at Alamo we didn't do enough to protect this student," and "that [S.H.] did not sign up for this fight." She was very apologetic and stated she would do everything she could to make things right. She gave Mrs. Hart the contact information for assistance. Claudia Valenzuela, the Principal for Alamo Junior High, also called Mrs. Hart and told her if there was an assault, police should have of arrested the students.

26. On or about May 2nd S.H. texted his mother and told her that a different student than before attacked him in the bathroom. S.H. told his mother he did not complain at that time to any at the School because no one had done anything to help in the past.

27. On the next day, Mrs. Hart sent an email to Dr. Tinajero about the incident in the bathroom the day before but there was no response. , She sent another. Again no response. Mother sent another. Finally, she contacted Ms. Valenzuela who said she would be investigating the allegations.

28. On May 22nd Valenzuela, and another Principal telephoned Mrs. Hart to let her know that S.H. had been attacked again. Ms. Valenzuela said she would investigate this incident also. Later, when mother spoke with her son she learned that during lunch, when the bell rang, a number of Hispanic students were waiting for S.H. to leave the cafeteria. A boy named Liam first pushed S.H. from the back and then another boy named Anthony grabbed S.H. by the

shirt, got in his face and yelled at him. S.H. spent the remainder of the day in the Principal's Office. Mrs. Hart told Ms. Valenzuela that her son S.H. would not be returning to the school because it was unsafe and they would not protect him.

29. Mother filed a grievance that her son had been a victim of bullying and harassment almost every day that Spring Semester. Further she had complained over and over and the School District stilled failed to protect her son. On May 31st the School District Administrators denied the first level grievance. Mother appealed and on or about July 20th the School District Administrators denied the second level grievance essentially ratifying the acts and omissions of staff. .

D.  THE FALL 2023 SEMESTER

30. When the Fall 2023 Semester started on or about August 9th, in the very first period another student confronted S.H. and said, "what's up lil nigga." That student, also Hispanic then threatened to have "his boy" Jessie beat S.H. up. Later that same day, a group of students, including Anthony and Tyson, were looking for S.H. to attack him.

31. On August 10, 2023, a student stood up and told S.H. that he was going get Jessie to take care of him and said, "... I will slap you little bitch." Mrs. Hart told her son to tell the new School Administrators about the threats. On the 11th mother reached out to Ms. Valenzuela but received no response. She then reached out to Principal Andrews complaining that the same boys who had been harassing her son the previous semester in middle school were doing it again in high school.

32. S.H. continued to be verbally harassed and tormented throughout the semester. Late in the Fall semester a number students began harassing S.H. again, now on social media. They

posted numerous images of S.H. in feminine attire, make-up an calling him gay and he was caught 'laking'[2]. On December 14, 2023, S.H. was again viciously beat up by many of the same students who had been bullying and harassing him for the better part of a year. In fact, some students were so brazen they contacted Mrs. Hart on the telephone so she heard them abusing her son, in a bathroom. She too was now threatened her as well.

## VII.  STATE ACTION

33. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth. In addition, each sentence and paragraph below, likewise incorporates by reference as if fully set forth herein, the one above it.

34. Here the School District was at all times and in all matters acting under color of state and federal law when the Student was subjected to the acts, omissions, wrongs and injuries set forth herein.

## VII.  CLAIMS PURSUANT TO THE U.S. CONSTITUTION

35. The Student has a constitutional right to life, liberty and the pursuit of happiness while at school. Moreover, the Student has a constitutionally protected property interest in public school education.

A.  Due Process Claims- Policy & Practice

36. During the relevant time period contemplated by this cause of action, the School Board by and through its designees—had an actual policy, practice, and custom of conscious and deliberate indifference to federal and state law, federal and state administrative directives, and their own Policies and Procedures regarding the treatment of S.H. and such failures were

---

[2]. 'Laking' is slang for letting someone ejaculate on a person's face.

a moving force in the injuries to him, for which his parents seek recovery pursuant to 42 U.S.C. §1983.

B.  Due Process Claims- Failure To Train and/or Supervise

37. Such failures by the School Board caused injuries to S,H, because they failed to sufficiently train staff to address the needs of children in general– and especially a student who was being bullied and harassed because of race, thereby violating his rights pursuant to the Fourteenth Amendment of the Constitution of the United States, for which he seeks recovery pursuant to 42 U.S.C. §1983.

38. In addition, Plaintiffs contends that School District failed to sufficiently supervise staff regarding addressing the needs of children in general– and especially a student with a disability like P.D. Such failures by the School District were a moving force in violating the rights of P.D., as contemplated by Due Process Clause of the Fourteenth Amendment of the Constitution of the United States, for which she seeks recovery pursuant to 42 U.S.C. §1983.

C..  Equal Protection Claim

39. Such failures by the School District were a moving force in violating the rights of S.H. as a class of one, as contemplated by the *Equal Protection Clause* of the Fourteenth Amendment of the Constitution for which he seeks recovery pursuant to 42 U.S.C. §1983.

D.  Parents and Student Rights

40. The failure of the School District to both provide and implement the law, rules, regulations, professional standards of care and own School Board Policy and Procedures likewise violates their civil rights as contemplated by Due Process Clause of the Fourteenth Amendment of the Constitution of the United States, for which they seek recovery pursuant to 42 U.S.C. §1983.

## VIII. CLAIMS PURSUANT TO TITLE VI OF THE CIVIL RIGHTS ACTS OF 1964

41. Title VI of the Civil Rights Act of 1964 provides that no person in the United States shall, on the grounds of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. 42 U.S.C. §2000d.  A School District may be held liable if they are deliberately indifferent to complaints a student was a victim of a hostile educational environment due to racial animus. Moreover, the harassment must be severe, pervasive, or persistent so as to constitute a hostile or abusive educational environment. Also, the District must be on notice of the race-based animus, be deliberately indifferent to it and the student experience a deprivation of equal opportunity to educational benefits provided his peers.  Here the acts and omissions of the Defendant School rise to the level of a plausible claim of discrimination based upon race,

## VIII. CLAIMS PURSUANT TO TITLE IX OF THE EDUCATIOAL ACTS OF 1972

42. Plaintiffs further contends that the acts and omissions of the failures of the Defendant School District to have effective policies, procedures, practices and customs in place to assure that S.H. was not a victim of bullying, harassment, or assault based upon gender, or based upon stereotypes based upon gender.  While they had relevant policies and procedures they failed to implement them as to S.H. and thus rose to the level of discrimination based upon sex, gender and/or gender stereotypes violating his rights pursuant to Title IX of the Education Amendments of 1972 (Title IX), 86 Stat. 373, as amended, 20 U.S.C. §1681 et seq., upon which he now seeks recovery.

## IX. RATIFICATION AND RESPONDENT SUPERIOR

43. The School Board ratified the acts, omissions and customs of School District personnel and staff and are thus liable to S.H.

44. Additionally, the School Board is responsible for the acts and omissions of staff persons who were otherwise responsible for the duty to provide S.H. a safe and non-hostile educational environment and to keep him free from discrimination based upon race and or gender stereotypes, all pursuant to the theory of *Respondent Superior*.

## XII.  SPOLIATION

45. Plaintiffs hereby requires and demands that the School District preserve and maintain all evidence pertaining to any claim or defense related to violations, causes of action, facts, and resulting damages set forth herein and/or made the basis of this petition and request for due process, including– but not limited to– statements, photographs, videotapes, audiotapes, surveillance, security tapes, business or medical records, incident reports, telephone records, emails, text messages, electronic data/information, and any other evidence, potential evidence, or potentially discoverable documents.

46. Failure to maintain such items will constitute "spoliation" of evidence, which will necessitate use of the spoliation interference rule—an inference or presumption that any negligent or intentional destruction of evidence was done because the evidence was unfavorable to the spoliator's case.

## XIII.  DAMAGES

47. As a direct and proximate result of the conduct of the School Board and School District S.H. suffered– and continues to suffer– injuries and damages for which he is entitled to recover herein including but not limited to:

a. Nominal damages;

b. Disparagement;

c. Loss of past educational opportunities;

d. Loss of future educational opportunities;

e. Physical pain and suffering in the past.

f. Mental anguish in the past;

g. Mental anguish in the future; and

h. Various out-of-pocket expenses incurred by S.H.'s family but for the acts and omissions of the School District.

## **PRAYER**

Plaintiffs prays for judgment against the School District in the manner and particulars noted above, and in an amount sufficient to fully compensate them for the elements of injuries enumerated herein, pursuant to IDEA, as well as the equitable issues noted above, and for such other and further relief as the Hearing Officer may deem just and proper in law or equity, or both.

Respectfully submitted,

/s/ Martin J. Cirkiel
Martin J. Cirkiel
SBOT: 00783829
marty@cirkielaw,com [Email]

Cirkiel Law Group, P.C.
1901 E. Palm Valley Boulevard
Round Rock, Texas 78664
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]