IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| **S.H. b/n/f DENIIS & BRANDY HART,** | § | |
| **and INDIVIDUALLY,** | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **MO:24-CV-00131-DC-RCG** |
| | § | |
| **MIDLAND INDEPENDENT SCHOOL** | § | |
| **DISTRICT,** | § | |
| *Defendant.* | § | |

<u>**REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE**</u>

BEFORE THE COURT is Defendant Midland Independent School District's Partial Motion to Dismiss (Doc. 5).[1] This case is before the undersigned through a Standing Order pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration of the Parties' briefs and the case law, the Court **RECOMMENDS** that Defendants' Partial Motion to Dismiss be **GRANTED**. (Doc. 5).

## I.    BACKGROUND

On May 29, 2024, Plaintiff S.H., by and through next friends and natural parents, Dennis and Brandy Hart ("Mr. and Mrs. Hart"), (collectively, "Plaintiffs") filed their Original Complaint against Midland Independent School District ("Defendant MISD"). (Doc. 1). Mr. and Mrs. Hart allege causes of action on behalf of S.H., as well as individually. *Id.* On behalf of all Plaintiffs, the Complaint alleges causes of action pursuant to 42 U.S.C. § 1983 and under theories of respondent superior and ratification for (1) failure to train under the Fourteenth Amendment, (2) failure to supervise under the Fourteenth Amendment, (3) denial of equal protection under the

---

1. All page number citations are to CM/ECF generated pagination unless otherwise noted.

Fourteenth Amendment, and (4) violation of the due process clause under the Fourteenth Amendment. (Doc. 1 at 12–15). Additionally, on behalf of only S.H., Plaintiffs allege claims pursuant to Title VI of the Civil Rights Acts of 1964 and Title IX of the Educational Acts of 1972.[2] *Id.* at 14. Finally, Plaintiffs state that S.H. is entitled to recover damages in the following categories: nominal damages, disparagement, loss of past and future educational opportunities, past physical pain and suffering, past and future mental anguish, and out-of-pocket expenses incurred by his family. *Id.* at 16.

Plaintiffs' factual allegations are as follows. In the spring semester of 2023, S.H. was an 8th grade student at Alamo Junior High School, located within Midland Independent School District. (Doc. 1 at 1). S.H. is described as Caucasian, small, and of diminutive stature for his age. *Id.* Plaintiffs allege that MISD has a predominantly Hispanic student population, and S.H. "was a victim of derision because of his race, and because he was not as 'macho' as his peers." *Id.* The Complaint also asserts that S.H. "was relentlessly bullied, on almost [a] daily basis, due to the fact that he did not fit into a stereotypical gender roll[]. He [h]ad been verbally assaulted with insults such as 'fag' or 'why are you gay?' which were often attached to the physical assaults." *Id.* at 7. Plaintiffs go on to describe several instances related to the bullying in detail.

On or about April 25, 2023, the Complaint explains that S.H. was sitting in class when 6– 7 students walked into the classroom and told S.H. to "come outside little bitch." *Id.* at 8. The teacher told the students to leave, which they did, but when it was time for S.H. to change classes, he was scared to leave. *Id.* The teacher wrote S.H. a note saying that he would be late for his next class. *Id.* However, when S.H. left the classroom, the students "rushed at him and attacked him," and a "Hispanic student named Nick punched him in the right side of his face."

---

2. Plaintiff's Response clarifies that Mr. and Mrs. Hart are not individually bringing claims under Title VI or Title IX. (Doc. 12 at 7–8, n.1).

*Id*. When S.H. got away, he explained what happened to his counselor. *Id*. The counselor sent S.H. to the principal, where he again described what happened. *Id*. The principal called Mrs. Hart around 3:15 p.m. and told S.H. to go back to class while he took care of the problem. *Id*. Unfortunately, as S.H. was leaving the office, the Complaint alleges that "he was jumped again by about five of the very same students who had attacked him earlier in the day. Now, Nick pushed him, then another student named Jessie punched him in the side of the head and [he was then] struck in the left side of the eye while he was trying to fight off both. Soon many other students started hitting S.H., so many he had to cover up and thus does not even know who they were. He was hit over and over again especially in the ribs. He had backpacks thrown at him." *Id*. at 8–9. Finally, a teacher broke up the fight, but soon after left S.H. alone. *Id*. at 9. Quickly after, Plaintiffs assert that S.H. was threatened by another student, so he went back to the principal's office for protection. *Id*. S.H. sustained large bruising around his eyes, swelling, and pain from this encounter. *Id*.

At around 3:30 p.m., the principal called Mrs. Hart again stating, "'we tried to save your son,' but were unable to do so." *Id*. The principal explained that S.H. was attacked by a group of five students, S.H. was sent back to class after the nurse checked on him, and the principal agreed to call the police. *Id*. The next day, April 26, 2023, S.H. "came home from school and told his mother that the same students that jumped him the day before were all still attending school and continued to bully and harass him." *Id*. Mrs. Hart called the principal and left a message because he did not answer. *Id*. The next day, Mrs. Hart talked with several different school employees, including student services and another principal, about her concerns for her son. *Id*. at 9–10.

On May 2, 2023, S.H. texted Mrs. Hart that a different student attacked him in the bathroom, but he did not complain to anyone at the school. *Id*. The following day, Mrs. Hart sent the principal three emails about the incident, but received no responses. *Id*. Another principal contacted Mrs. Hart and told her she would be investigating the allegations. *Id*. On May 22, 2023, that same principal called Mrs. Hart to let her know that S.H. had been attacked again and she would investigate this incident as well. *Id*. After hearing the details of the incident from S.H., Mrs. Hart told this principal that "S.H. would not be returning to the school because it was unsafe and they would not protect him." *Id*. at 10–11. Mrs. Hart "filed a grievance that her son had been a victim of bullying and harassment almost every day that Spring Semester," and that "she had complained over and over and the School District still[] failed to protect her son." *Id*. at 11. After the School District denied the first level grievance, Mrs. Hart appealed. *Id*. The School District denied the second level grievance. *Id*.

In the fall of 2023, S.H. started 9th grade at Legacy Freshman High School, still within MISD. *Id*. at 1. The Complaint alleges that on the first day of school, a student "confronted" S.H. and "threatened to have 'his boy'" beat S.H. up. *Id*. at 11. Then, later that same day, a group of students "were looking for S.H. to attack him." *Id*. The next day, August 10, 2023, a student told S.H. he was going to get another student "to take care of care him." *Id*. Following this, Mrs. Hart told her son to tell the new School Administrators about the threats. *Id*. Mrs. Hart then reached out to the new principal of the high school complaining that the same boys who had been harassing her son the previous semester in middle school had followed him to high school. *Id*. The Complaint explains that S.H. continued to be verbally harassed and tormented throughout the semester, including on social media. *Id*. Finally, on December 14, 2023, Plaintiffs assert that "S.H. was again viciously beat up by many of the same students who had been bullying and

harassing him for the better part of a year. In fact, some students were so brazen they contacted Mrs. Hart on the telephone so she heard them abusing her son[] in a bathroom." *Id*. at 12.

In addition to the factual allegations, the Complaint describes the different policies and procedures that the MISD School Board has in place regarding bullying and harassment of students based upon race, nationality, and country of origin, and separately for bullying and harassment of students based upon sex, gender, and gender stereotypes. *Id*. at 3. The Complaint states that if a report of bullying is submitted, the principal shall conduct an investigation and take action calculated to prevent bullying during that time. *Id*. at 4. The investigation should be completed within ten days and the principal shall prepare a final, written report of the investigation. *Id*. Further, the policy provides for counseling options for students who are victims of bullying. *Id*. at 5. Another policy also explains that when the District receives notice or an allegation of conduct that, if proven, would meet the definition of sexual harassment under Title IX, the Title IX coordinator shall promptly contact the complainant to discuss the availability of supportive measures and explain the process for filing a formal complaint. *Id*. Finally, a policy focused on freedom from discrimination, harassment, and retaliation contemplates much of the same, but also "sets out a very specific investigatory process, the rights of the student and parent during the process, record keeping duties and remedies that the School Board should provide a victim a number of what are termed 'supportive measures.' Moreover the victim and her family must receive information about their legal rights during this process as well as their right to appeal of an unfavorable decision. Last[,] the alleged victim and family be notified of their right to be free from coercion and retaliation." *Id*. at 7. Plaintiffs assert that all the School Board Policies & Procedures taken together create "Parents Rights." *Id*

On August 12, 2024, Defendant MISD filed a Partial Motion to Dismiss Plaintiffs' Complaint. (Doc. 5). Defendant MISD argues (1) Mr. and Mrs. Hart lack standing to assert individual claims under 42 U.S.C. § 1983, Title VI, and Title IX; (2) Plaintiffs' claims on behalf of S.H. under 42 U.S.C. § 1983 should be dismissed; and (3) Plaintiffs' claims for mental anguish damages under Title VI and Title IX should be dismissed. *Id*. at 1. The instant matter is fully briefed and ripe for disposition.

## II.    LEGAL STANDARD

Dismissal is proper under Rule 12(b)(1) "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Furthermore, when a Rule 12(b)(1) motion is accompanied by the filing of another Rule 12 motion, the former should be considered before addressing attacks on the merits. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977). "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming*, 281 F.3d at 161.

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155*, 681 F.3d 614, 617 (5th Cir. 2012)); *see Torch Liquidating Tr. ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain recovery") (internal quotation marks and citations omitted).

In a court's review of a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither

"strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

## III.     DISCUSSION

### A. Mr. and Mrs. Hart's Individual Claims Under Title VI, Title IX, and 42 U.S.C. § 1983

In its Partial Motion to Dismiss, Defendant MISD argues that Mr. and Mrs. Hart, individually, lack standing to seek recovery under Title VI, Title IX, and § 1983 and seek dismissal under Rule 12(b)(1). (Doc. 5 at 11). In Plaintiffs' Response, however, they clarified that Mr. and Mrs. Hart are not individually asserting claims under Title VI and Title IX. (Doc. 12 at 7–8 n.1). Plaintiffs do assert though that Mr. and Mrs. Hart alleged facts to support an individual injury under § 1983 such that the Court has jurisdiction over their claim. *Id*. at 18–19.

The Court will begin by addressing Mr. and Mrs. Hart's standing to bring individual claims under § 1983. Mr. and Mrs. Hart appear to argue that they have standing to bring § 1983 claims because their constitutionally protected parental rights were violated when MISD failed to provide them with procedural safeguards outlined in the School Board's Policies & Procedures as their son was a victim of bullying and harassment. *Id*. at 19. Further, Mr. and Mrs. Hart argue they have standing because they have incurred their own pecuniary damages, including out-of-pocket expenses and attorneys' fees. *Id*. Finally, only Mrs. Hart asserts that she has experienced mental anguish as a result of her son being bullied and the School District Officials failing to respond to her concerns. *Id*. at 18.

Article III of the United States Constitution limits federal courts' jurisdiction to cases and controversies. U.S. CONST. art. III § 2. "Among other things, that limitation requires a plaintiff to have standing." *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 295 (2022). "The requisite elements of Article III standing are well established: A plaintiff must show (1) an injury in fact,

(2) fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by the requested relief." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). To meet the first element, the injury suffered must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). The traceability requirement "does not require a party to establish proximate causation, but only requires that the injury be 'fairly traceable' to the defendant." *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 431 (5th Cir. 2011) (citing *Bennett v. Spear*, 520 U.S. 154, 168–69 (1997)). Finally, it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc.*, 528 U.S. at 181.

First, the Court can dispose of Mrs. Hart's standing argument related to mental anguish. "[U]nder Texas law, mental anguish damages are recoverable in wrongful death suits." *Wackman v. Rubsamen*, 602 F.3d 391, 405 (5th Cir. 2010). However, there is a limited exception that allows for recovery when a child sustains a non-fatally injury, but "only under highly circumscribed circumstances." *Doe v. Apostolic Assembly of Faith in Christ Jesus*, 452 F. Supp. 3d 503, 539 (W.D. Tex. 2020) (citing *Roberts v. Williamson*, 111 S.W.3d 113, 120 (Tex. 2003)); *Flores v. Cameron County*, 92 F.3d 258, 271 (5th Cir. 1996) ("We have consistently held that a parent may recover damages *analogous to state law wrongful death damages* in a § 1983 action based on the violation of her child's civil rights."). "A parent can only recover mental anguish damages for a non-fatal injury to their child under a bystander recovery theory, meaning their damages must arise directly from their contemporaneous sensory perception of the serious injury occurring." *Apostolic Assembly of Faith*, 452 F. Supp. at 539; *Unger v. Compton*, No. 05-CV-186, 2006 WL 1737567 (E.D. Tex. June 23, 2006), *aff'd*, 249 Fed. Appx. 346 (5th Cir. 2007)

(unpublished) (holding a father lacks capacity to bring claims pursuant to § 1983 because he only alleged to have suffered mental anguish and distress due to the unlawful arrest and imprisonment of his son). Plaintiffs only allege one incident involving Mrs. Hart that relates to this type of recovery, but it is not sufficiently pled to create standing. The Complaint states, "On December 14, 2023, S.H. was again viciously beat up by many of the same students who had been bullying and harassing him for the better part of a year. In fact, some students were so brazen they contacted Mrs. Hart on the telephone so she heard them abusing her son, in a bathroom." (Doc. 1 at 12). From this allegation, the Court can infer that Mrs. Hart's mental anguish could have arisen from her contemporaneous sensory perception of S.H.'s injury. *Apostolic Assembly of Faith*, 452 F. Supp. at 539. However, it is not clear from the pleadings that S.H. suffered an injury, let alone a "serious injury." *Id*. The Complaint explains that S.H. was "viciously beat up" and that Mrs. Hart heard the students "abusing her son." (Doc. 1 at 12). Plaintiffs do not state that S.H. was injured from this experience or that he had to seek any medical attention from it. Without any indication of the sort, the Court cannot conclude that Mrs. Hart suffered mental anguish or damages from perceiving her son being seriously injured. Therefore, Mrs. Hart does not have standing based on an injury of mental anguish.

Second, Mr. and Mrs. Hart argue that they have individual standing to sue based on the pecuniary damages they have incurred, including out-of-pocket expenses and attorneys' fees. (Doc. 12 at 19). This case is comparable to *Martinez v. Rojo*, No. 17-CV-00102, 2020 WL 2542612 (N.D. Tex. May 19, 2020). There, a mother, individually and on behalf of her daughter, brought a § 1983 suit against a police detective who sexually assaulted her daughter. *Id*. at *1. The mother individually alleged standing, in part, due to her pecuniary claims of lost income, past and future medical expenses, and expenses associated with moving herself and her daughter

out of the state. *Id.* at *2. The court held that "[w]hile such claims may be recoverable under a state law tort theory, they do not implicate a constitutional right and, therefore, are not cognizable under § 1983 as a violation of the mother's own constitutional rights." *Id.* at *3. Just as the mother there did not have standing to bring her claims individually under § 1983, Mr. and Mrs. Hart likewise do not. Expenses and attorneys' fees do not implicate their constitutional rights; therefore, it is not an actionable injury under § 1983, and Mr. and Mrs. Hart cannot claim standing.

Finally, Mr. and Mrs. Hart argue that they can pursue this action individually because "a parent can hav[e] standing when the acts and omissions of a School District *impede* . . . the constitutionally protected parental rights. This is exactly what happened here . . . ." (Doc. 12 at 19). While Mr. and Mrs. Hart make this argument in their Response, the Court[3] struggles to see where in the Complaint they allege that MISD violated their parental rights. *Cutrera v. Bd. of Supervisors*, 429 F.3d 108, 113 (5th Cir. 2005) (explaining that a claim which was not raised in the Complaint, but was raised for the first time in a Response is not properly before the court). And the Response failed to point the Court to such allegations in their Complaint. Admittedly, Mr. and Mrs. Hart do consistently refer to "Parents Rights" in their Complaint. (Doc. 1 at 2–4, 7, 13). However, from what the Court can glean, Plaintiffs are not referring to fundamental parental due process rights protected under the Fourteenth Amendment, but rather are referencing "rights" created by MISD's School Board Policies & Procedures. *See id.* at 4 ("Taken together these School Board Policies & Procedures act as "Parent & Student Rights" with significant substantive and procedural protections."); *see also id.* at 7 ("Taken together, this amalgam of the

---

3. Based on the briefing, it seems as though Defendant MISD did not recognize that Mr. and Mrs. Hart were asserting a parental rights claim pursuant to § 1983 and as a basis for their individual standing. MISD challenged Mr. and Mrs. Hart's standing in its Motion to Dismiss, but MISD did not specifically discuss parental rights until its Reply to Plaintiffs' Response that arguably raised the issue for the first time.

law, regulations, professional guidelines and School Board Policies & Procedures[] create 'Parents Rights.[']"). This reference to Parents Rights is most perplexing in Plaintiffs' Complaint under the section, "VII. Claims Pursuant to the U.S. Constitution." Plaintiffs provide a subheading—"Parents and Student Rights"—then state:

> The failure of the School District to both provide and implement the law, rules, regulations, professional standards of care and own School Board Policy and Procedures likewise violates their civil rights as contemplated by Due Process Clause of the Fourteenth Amendment of the Constitution of the United States, for which they seek recovery pursuant to 42 U.S.C. §1983.

(Doc. 1 at 13). As Mr. and Mrs. Hart do not specifically invoke their constitutional parental rights, the Court is inclined to find that they did not meet their burden to establish individual standing because they did not allege a right to recovery, separate from the injuries to their child. *See Martinez v. Maverick County*, 507 F. App'x 446, 448 n.1 (5th Cir. 2013) ("Plaintiff's husband and her son failed to establish standing by not putting forth facts implicating a right of recovery separate from the alleged violations of Plaintiff's personal rights."); *Unger*, 2006 WL 1737567 (dismissing a father's claims pursuant to § 1983 because he failed to allege any personal deprivation of his constitutional rights); *Moreno v. McAllen Indep. Sch. Dist.*, No. 15-CV-162, 2016 WL 1258410, *6 (S.D. Tex. Mar. 31, 2016) (dismissing a mother's parental rights claim pursuant to § 1983 because her injuries arise from the injury to her child).

If the Court construed Plaintiffs' Complaint quite liberally, it could see that Mr. and Mrs. Hart alleged an injury in the form of a deprivation of their constitutional parental rights under the Fourteenth Amendment. The Fourteenth Amendment prohibits States from depriving persons "of life, liberty, or property, without due process of law." *See* U.S. CONST. amend. XIV, § 1. To succeed on a Fourteenth Amendment Due Process claim, Mr. and Mrs. Hart "must show that they have asserted a recognized 'liberty or property' interest within the purview of the

Fourteenth Amendment . . . and that they were intentionally or recklessly deprived of that interest, even temporarily, under color of state law . . . . *Griffith v. Johnston*, 899 F.2d 1427, 1435 (5th Cir. 1990). The Supreme Court has "long recognized that the Amendment's Due Process Clause, like its Fifth Amendment counterpart, 'guarantees more than fair process.' The Clause also includes a substantive component that 'provides heightened protection against government interference with certain fundamental rights and liberty interests.'" *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality opinion). "One of 'the fundamental liberty interests' recognized by the Court is the 'interest of parents in the care, custody, and control of their children.'" *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 288 (2001) (citing *Troxel*, 530 U.S. at 65–66). Parental rights are "perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel*, 530 U.S. at 65–66. "Since the parent-child relationship is one that is constitutionally protected, a violation of this right may permit a party to proceed with a Section 1983 action." *Moreno*, 2016 WL 1258410, at *6; *see Doe v. Dallas Indep. Sch. Dist.*, 194 F. Supp. 3d 551 (N.D. Tex. 2016).

While an alleged violation of Mr. and Mrs. Hart's parental rights under the Due Process clause would constitute an injury in fact to satisfy the first element of standing, their right to bring this claim pursuant to §1983 fails at the second and third elements—traceability and redressability. *See Fed. Election Comm'n*, 596 U.S. at 295. The second element requires the injury to be traceable to the defendant's conduct. *League of United Latin Am. Citizens, Dist. 19*, 659 F.3d at 431 (citing *Bennett*, 520 U.S. at 168–69). Thus, Mr. and Mrs. Hart must show that the violation of their parental rights can be traced to MISD's conduct. However, as discussed in further detail below, a municipality—such as MISD—cannot be held liable for the acts of its employees, but rather the municipality can only be held liable for unconstitutional conduct that

can be directly attributed to it through an official action. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). In order for Mr. and Mrs. Hart to trace their injury to MISD's conduct, they would have to allege that MISD's policy regarding bullying and harassment was unconstitutional. *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009). And that the implementation of that unconstitutional policy could be traced to the deprivation of Mr. and Mrs. Hart's parental rights. But they do not. Even in their Response, Mr. and Mrs. Hart argue that MISD's School Board Policies and Procedures provided "a number of procedural safeguards," but the "School District Officials failed to provide these safeguards." This shows that Mr. and Mrs. Hart's injury could only potentially be traced to MISD's employees, but not to the municipality. *See Bennett*, 520 U.S. at 169 ("[I]t it does not suffice if the injury complained of is the result of the *independent* action of some third party not before the court . . . .") (cleaned up); *Morena v. McAllen*, 2016 WL 3198159, at *9 (S.D. Tex. June 9, 2016) ("[F]or Section 1983 liability Plaintiff cannot impute the actions of principals, teachers and other subordinates to the school district.").

For similar reasons, Mr. and Mrs. Hart's alleged violation of their parental rights could not be redressed by proceeding with this claim. With MISD as the only defendant in this case, Mr. and Mrs. Hart are unable to receive relief because they have not alleged any unconstitutional conduct of MISD. In the context of § 1983 claims against a municipality, a plaintiff must assert a municipal policy or custom that caused the injury in order to get relief. *Goodman*, 571 F.3d at 395. Again though, Mr. and Mrs. Hart have taken no issue with MISD's policies surrounding bullying, so even a favorable decision would not redress their injury because they do not allege that MISD's policies are unconstitutional. *See Friends of the Earth, Inc.*, 528 U.S. at 181.

Having concluded that Mr. and Mrs. Hart have not satisfied the requirements for standing, the Court **RECOMMENDS** that Defendant's Partial Motion to Dismiss under Rule 12(b)(1) be **GRANTED**. (Doc. 5).

### B.  Plaintiffs' Claims, on Behalf of S.H., Under 42 U.S.C. § 1983

Mr. and Mrs. Hart also bring claims pursuant to § 1983 on behalf of their son, S.H. "Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating already conferred federal rights." *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003) (citing *Albright v. Oliver*, 510 U.S. 266 (1994)). "[A] municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). For municipal liability to attach to MISD, the unconstitutional conduct must be "directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski*, 237 F.3d at 578. A municipality may be held liable only "where 'the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *Hicks-Fields v. Harris County*, 860 F.3d 803, 808 (5th Cir. 2017) (quoting *Monell*, 436 U.S. at 690). Thus, when bringing such a § 1983 claim, the plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury," *Goodman*, 571 F.3d at 395, and show that the municipality made "a deliberate choice to follow a course of action . . . from among various alternatives by city policymakers." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (internal quotations and alterations omitted). This is because "the Court 'intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action

for which the municipality is actually responsible.'" *Sanchez v. Gomez*, 283 F. Supp. 3d 524, 533 (W.D. Tex. 2017) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)).

To hold a municipal entity, such as MISD, liable for constitutional violations committed by municipal officers, a plaintiff must prove three elements: "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peña v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018) (quoting *Hicks-Fields*, 860 F.3d at 808). In other words, "to prevail against a public school district, a plaintiff must show that the district's final policymaker acted with deliberate indifference in maintaining an unconstitutional policy that caused the plaintiff's injury." *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 365 (5th Cir. 2020). The plaintiff may satisfy the first element by demonstrating the existence of an official policy "through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority" or by showing the existence of a "persistent, widespread practice." *Sanchez*, 283 F. Supp. 3d at 533–34 (quoting *Valle v. City of Houston.*, 613 F.3d 536, 541–42 (5th Cir. 2010); *Piotrowski*, 237 F.3d at 579 (5th Cir. 2001)). Additionally, alleging a policy by showing that there was a widespread practice "requires the plaintiff to allege facts demonstrating a 'pattern of abuses that transcends the error made in a single case.'" *Bright v. City of Killeen*, No. 20-CV-431, 2021 WL 1226560, at *3 (W.D. Tex. Mar. 31, 2021) (quoting *Piotrowski*, 336 F.3d at 370). "That is, Plaintiff cannot satisfy the *Twombly* or *Iqbal* pleading standards on her official policy-or-custom allegation if the only facts she alleges with specificity relate to the events that gave rise to this action." *Ayon v. Austin Indep. Sch. Dist.*, 19-CV-586, 2020 WL 1536383, at *4 (W.D. Tex. Mar. 31, 2020) (citing *Ratliff v. Aransas Cty.*, 614 F.3d 161, 169 (5th Cir. 2010)).

As to the second element, "[a] policy or custom is official only 'when it results from the decision or acquiescence of the municipal officer or body with "final policymaking authority" over the subject matter of the offending policy.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (quoting *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). Further, the municipality or official with policymaking authority must have had "[a]ctual or constructive knowledge of such [policy or] custom." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984). "[W]hether an official had final policymaking authority is a question of state law." *Pembaur v. Cty. of Cincinnati*, 475 U.S. 469, 483 (1986). Here, Plaintiffs' do not dispute that the final policymaker is MISD's Board of Trustees. *See Doe v. Edgewood*, 964 F.3d 351, 365 (5th Cir. 2020) ("Texas law is clear that final policymaking authority in an independent school district . . . rests with the district's board of trustees.").

Third, "a plaintiff must allege 'moving force causation,'" which requires the plaintiff to show "that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Sanchez*, 283 F. Supp. 3d at 534 (quoting *Valle*, 613 F.3d at 542). The degree of culpability required is "deliberate indifference," which "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Bd. of Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)).

While the Complaint is not entirely clear, Plaintiffs appear to allege municipal liability under several theories. Plaintiffs allege that MISD violated their constitutional rights pursuant to the Fourteenth Amendment's Due Process Clause by failing "to train staff to address the needs of children in general" and "to sufficiently supervise staff regarding addressing the needs of

children in general." (Doc. 1 at 13). Further, Plaintiffs assert that "[s]uch failures by the School District were a moving force in violating the rights of S.H. as a class of one, as contemplated by the Equal Protection Clause of the Fourteenth Amendment . . . ." *Id*.

The issue, however, is that Plaintiffs have pleaded no facts that suggest MISD's School Board maintained an official policy or custom that was permissive of students being bullied or harassed in school. In fact, quite the opposite exists here. Through the Complaint, Plaintiffs acknowledge that MISD's School Board has several policies to address this type of situation:

> The School Board has promulgated a number of Policies & Procedures on how to address bullying and harassment based upon race (Title VI) or upon sexual harassment (Title IX). In fact a review of said Policies & Procedures evidence they are predicated upon well-settled jurisprudence regarding each. Taken together they set forth a number of "Procedural Safeguards" to assure the civil rights of the student, and by extension those the parents are all fully effectuated. It designates a very specific investigatory process requiring a person specifically trained in areas of Title VI and/or Title IX to conduct the investigation. It requires Staff to give notice of these various rights to the parents including and especially the name and contact information of the Title VI and/or Title IX Coordinator and how to file a formal complaint. It requires strict record keeping duties and a written report to be given to the parents. It delineates a number of remedies, including counseling, that the School Board should provide the victim of bullying, harassment and assault termed 'supportive measures.' The family must receive information about their right to appeal an unfavorable decision. Importantly, the family must also be notified of their right to be free from retaliation when filing a complaint.

(Doc. 12 at 13–14). Because Plaintiffs assert that MISD's School Board did have an official policy, Plaintiffs must plead facts indicating that this policy was the "moving force" behind the alleged constitutional violations. *See Sanchez*, 283 F. Supp. 3d at 534. To this point, Plaintiffs appear to argue that the failure of the School District—not the School Board—to follow the Board's policies and procedures related to bullying led to the constitutional violations. (Doc. 12

at 14). The problem with this argument though is that to make a claim for municipal liability pursuant to § 1983 against MISD, Plaintiffs must assert that "[MISD's School Board] acted with deliberate indifference in maintaining an unconstitutional policy that caused the plaintiff's injury." *Edgewood Indep. Sch. Dist.*, 964 F.3d at 365. Here, Plaintiffs do not take issue with the School Board's policy, but rather that the School District employees did not following the policy. (*See* Doc. 12 at 14); *see also Peterson v. City of Fort Worth*, 588 F.3d 838, 852 (5th Cir. 2009) ("[T]here was sufficient evidence to establish Peterson's excessive force claim. Peterson, however, did not sue the officer or officers who violated his constitutional rights. Instead he sought to impose liability on the City of Fort Worth for the misconduct of its employees. In this connection, he failed to produce evidence to satisfy the demanding standards required by *Monell* and its progeny to hold the City liable . . . .). Further, Plaintiffs did not allege any pattern, widespread practice, or even just one other incident of the School Board policies not being followed by employees. *See Bright*, 2021 WL 1226560, at *3 (quoting *Piotrowski*, 336 F.3d at 370). Therefore, this is not sufficient to state a claim of municipal liability.

Plaintiffs' only other allegation regarding the policy being a moving force behind the constitutional violations is that "the School Board by and through its designees—had an actual policy, practice, and custom of conscious and deliberate indifference to federal and state law, federal and state administrative directives, and their own Policies and Procedures regarding the treatment of S.H. and such failures were a moving force in the injuries to him, for which his parents seek recovery pursuant to 42 U.S.C. §1983." (Doc. 1 at 12–13). However, to survive a motion to dismiss "Plaintiff must describe the official policy and its relationship to the underlying violation with specific facts." *Id*. (citing *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) ("The description of a policy or custom and its relationship to the

underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts."); *Pagan-Negron v. Seguin Indep. Sch. Dist.*, 974 F. Supp. 2d 1020, 1032 (W.D. Tex. 2013) ("The description of the policy or custom and its relationship to the underlying constitutional violation must be more than conclusory.")). Plaintiffs' allegation is insufficient because it is conclusory, and Plaintiffs fail to provide a link between the policy and the alleged constitutional violations.

Finally, Plaintiffs briefly offer two alternative theories of municipal liability: respondent superior and ratification. As the Court mentioned above, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory," and Plaintiffs make no compelling argument to the contrary. *Monell*, 436 U.S. at 691; (*See* Docs. 1 at 15; 12). As to ratification, Plaintiffs state both that "Mother appealed and on or about July 20th[,] the School District Administrators denied the second level grievance essentially ratifying the acts and omissions of staff" and "The School Board ratified the acts, omissions and customs of School District personnel and staff and are thus liable to S.H." (Doc. 1 at 11, 15). The first allegation that the School District Administrators ratified the acts and omissions of MISD staff can be quickly dismissed as School District Administrators are not the final policymakers of an independent school district. As to the second allegation, the Fifth Circuit has stated that "our precedent has limited the theory of ratification to 'extreme factual situations.'" *Peterson*, 588 F.3d at 848. This case does not present such a situation. *See id*. (citing *Compare Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985) (finding ratification in case in which officers "poured" gunfire onto a truck and killed innocent occupant), *with Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998) (refusing to find ratification in case in which officer shot fleeing suspect in the back)).

Even assuming, *arguendo*, the Court found that MISD could be held liable as a municipality, Plaintiffs do not sufficiently plead their claims pursuant to § 1983. The Court will address each claim in turn.

### i.    Failure to Train Under the Fourteenth Amendment

Plaintiffs pursue municipal liability through a failure to train claim. (Doc. 1 at 13). A municipality may be held liable for failure to train under limited circumstances. *Snyder*, 142 F.3d at 795 (referencing *City of Canton*, 489 U.S. 378). However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61 (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822–23 (1985)). To avoid dismissal of a failure to train claim, Plaintiffs must plead sufficient facts to show: "(1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010). A school district can be held liable under a failure to train claim pursuant to § 1983 only when the "failure to train reflects deliberate indifference to the constitutional rights of its [students]." *City of Canton*, 489 U.S. at 392.

Further, "because the standard for municipal fault is a stringent one, a pattern of similar constitutional violations by untrained employees is ordinarily required to show deliberate indifference." *Peña*, 879 F.3d at 623 (quoting *Connick*, 563 U.S. at 62) (cleaned up). In their Response, Plaintiffs acknowledge that "there generally must be a 'pattern' or notice of constitutional violations," however, Plaintiffs argue that there is a "single-incident exception" that "is typically reserved for cases like S.H.'s where there is an absolute inference staff were not trained at all." (Doc. 12 at 24–25). The Fifth Circuit has expressly stated that Plaintiffs cannot

avail themselves of the single-incident exception unless they allege that the government actor was provided "no training whatsoever." *Hutcheson v. Dallas County*, 994 F.3d 477, 483 (5th Cir. 2021). Here, Plaintiffs do not allege a single fact regarding the training of MISD employees. While Plaintiffs attempt to assert in their Response that the Court can infer the MISD staff was "not trained at all" on the School Board's policies, the facts appear to tell a different story. (Doc. 12 at 25). In the Complaint, Plaintiffs explained that after the first bullying incident on April 25, 2023, S.H. spoke with the counselor, who sent him to the principal. (Doc. 1 at 8). After S.H. told the principal what happened, the principal notified Mrs. Hart. *Id*. Fifteen minutes later, following another incident, the principal again notified Mrs. Hart. *Id*. at 8–9. The next day, Mrs. Hart spoke with an employee from Student Services, who provided "Mrs. Hart the contact information for assistance." *Id*. at 9–10. On May 2, 2023, another incident occurred in the bathroom, but S.H. did not report it. *Id*. at 10. Mrs. Hart, after learning about the incident from her son, contacted the principal, "who said she would be investigating the allegations." *Id*. On May 22, 2023, "another principal telephoned Mrs. Hart to let her know that S.H. had been attacked again. [The principal] said she would investigate this incident also." *Id*. Following these incidents, Mrs. Hart filed a first-level grievance and appealed the denial of that grievance. *Id*. at 11.

While the Court does not need to weigh into whether the employees followed the School Board's policy to a tee, the Complaint fails to show that they received no training at all. On a basic level, Plaintiffs allege that the policies provide that the District undertake an investigation after being notified of an incident, the District should provide the victim with "supportive measures," and the victim and their family should receive information about their legal rights, including to file a complaint and appeal its decision. (Doc. 1 at 6–7). The facts alleged here do

not support the inference that MISD employees received no training on the School Board's policy as many of their actions seem to mirror the process laid out in the policy. Because Plaintiffs fail to plead either facts to establish that there was a pattern of constitutional violations as a result of untrained employees or that this situation should fall under the single-incident exception because the employees were wholly untrained, Plaintiffs did not show that MISD was deliberately indifferent. Therefore, Plaintiffs' allegations against MISD based on a failure to train claim are insufficient under Rule 12(b)(6).

### ii.    Failure to Supervise Under the Fourteenth Amendment

Additionally, Plaintiffs include two sentences in their Complaint regarding municipal liability under a failure to supervise theory. (Doc. 1 at 13). However, as MISD points out in its Motion to Dismiss, the Complaint refers to student "P.D.," who has a disability. *Id.*; (Doc. 5 at 18). The student in this lawsuit is exclusively referred to as "S.H.," and Plaintiffs never provide that S.H. has a disability. Without addressing this discrepancy, Plaintiffs' Response provides that "[t]he facts and reasonable inferences that flow from such facts evidence the School Principal was the person delegated by the School Board to address the above-noted issues of concern. It is his wrongful conduct, the failure to follow School Board Policies [&] Procedures that caused the constitutional injuries boy S.H. and his parents experienced." (Doc. 12 at 25). Even if the Court assumes that the reference to "a student with a disability like P.D." was inadvertent and Plaintiffs always intended to refer to S.H., Plaintiffs do not sufficiently state a claim for failure to supervise. (Doc. 1 at 13).

Similar to a § 1983 claim for failure to train, under a failure to supervise claim, Plaintiffs must show that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's

rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Goodman*, 571 F.3d at 395. "To establish deliberate indifference, 'a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation.'" *Id.* (quoting *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir.2003) (internal quotation omitted)). Here, Plaintiffs fail to meet these three elements. Plaintiffs appear to argue in their Response—yet not their Complaint—that the School Principal[4] is the supervisor in this claim. (*See* Doc. 12 at 25). However, Plaintiffs also allege that it was the School Principal's wrongful conduct of failing to follow School Board Policies & Procedures that caused the injuries to Plaintiffs. *Id.* Thus, Plaintiffs do not argue that the supervisor failed to supervise a subordinate official, but rather that the supervisor directly caused the harm meaning a failure to supervise could not have caused any alleged constitutional violations. On top of that, Plaintiffs did not allege any factual allegations to establish deliberate indifference, so the Court does not need to address the other two prongs of supervisor liability. *Goodman*, 571 F.3d at 395. Therefore, Plaintiffs allegations against MISD based on a failure to supervise claim are insufficient under Rule 12(b)(6).

### iii.    Denial of Equal Protection Under the Fourteenth Amendment

Finally, Plaintiffs allege that MISD is liable for violating S.H.'s right, as a class of one, to equal protection under the Fourteenth Amendment. (Doc. 1 at 13). "To state a 'class of one' claim under the Equal Protection Clause, the plaintiff must allege that: (1) the defendant intentionally treated plaintiff differently from others similarly situated, and (2) the defendant lacked a rational basis for the difference in treatment." *Martinez v. New Deal Indep. Sch. Dist.*, 802 F. App'x 98, 100 (5th Cir. 2020). To even begin to succeed on this claim, Plaintiffs must

---

3. Plaintiffs' Complaint refers to multiple MISD principals, so the Court cannot determine which individual Plaintiffs are referencing here. (Doc. 1 at 8, 10–11).

allege that there are individuals that S.H. is similarly situated to. *See, e.g.*, *id.*; *Integrity Collision Ctr. v. City of Fulshear*, 837 F.3d 581, 587 (5th Cir. 2016); *Lindquist v. City of Pasadena*, 669 F.3d 225, 233 (5th Cir. 2012). Plaintiffs fail to do this. Plaintiffs only argue that "S.H. could not traverse the school environment safely as compared to his peers and there is no rational[] basis for him to be treated differently than his peers." (Doc. 12 at 23). This, however, does not allege that any individuals were similarly situated to S.H., let alone any facts to support that MISD intentionally treated S.H. differently than these peers without a rational basis. *See Martinez*, 802 F. App'x 98. Therefore, Plaintiffs allegations against MISD based on an equal protection claim are insufficient under Rule 12(b)(6).

The Court finds that Plaintiffs failed to allege municipal liability against MISD under § 1983 because Plaintiffs did not show there was an official policy that was the moving force behind the alleged constitutional violations. Further, Plaintiffs did not sufficiently state a claim pursuant to § 1983 for failure to train, failure to supervise, and denial of equal protection. Therefore, the Court **RECOMMENDS** Defendant's Partial Motion to Dismiss be **GRANTED** as to Mr. and Mrs. Hart and S.H.'s claim pursuant to 42 U.S.C. § 1983. (Doc. 5).

### C. Mental Anguish Damages Under Title VI and Title IX

In the instant Motion, Defendant MISD argues that Plaintiffs cannot claim emotional distress damages, such as damages for mental anguish, under Title VI and Title IX based on a recent Supreme Court decision. (Doc. 5 at 23) (citing *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 221–22 (2022)). While it is not entirely clear whether Plaintiffs even seek to recover these types of damages under Title VI and Title IX, specifically, Plaintiffs agree in their Response that "claims solely for emotional anguish damages pursuant to either Title VI or Title IX are foreclosed by the Supreme Court's decision in *Cummings*[, S.H.] is nevertheless

entitled to other forms of compensatory damages." (Doc. 12 at 26). Therefore, to the extent Plaintiffs sought emotion distress damages under Title VI and Title IX on behalf of S.H., the Court **RECOMMENDS** Defendant MISD's Partial Motion to Dismiss under Rule 12(b)(6) be **GRANTED**. (Doc. 5).

### D. Plaintiffs' Request for Leave to Amend

In their Response, Plaintiffs request, in the alternative, that the Court grant them leave to amend their complaint for the first time. (Doc. 12 at 17). Federal Rule 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). Rule 15(a) "favors granting leave to amend unless a substantial reason exists, such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party, and futility of amendment.'" *Smith v. McDonough*, SA-22-CV-01383, 2023 WL 5918322, at *9 (W.D. Tex. Sept. 8, 2023) (quoting *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993)). Although "leave to amend is by no means automatic," a court should "possess a 'substantial reason' to deny leave to file an amended complaint." *Lawton v. Osado Water Transfer Co.*, No. 15-CV-00189, 2016 WL 11586133, at *1 (W.D. Tex. Sept. 15, 2016) (citations omitted). Here, the Court finds leave to amend proper, as there is no evidence of undue delay, bad faith, and this will be Plaintiffs' first amendment to their Complaint. Thus, the Court **RECOMMENDS** Plaintiffs' request to amend their Complaint be **GRANTED**.

### IV.    CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** Defendant's Partial Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) be **GRANTED**. (Doc. 5). Additionally, the Court **RECOMMENDS** that Plaintiffs' request for leave to amend be **GRANTED**.

SIGNED this 13th day of January, 2025.

_____
RONALD C. GRIFFIN
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT**

In the event that a party ***has not been served*** by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).